UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEVEN WYNN,

     Plaintiff,

v.                          CASE No. 8:09-CV-983-T-TGW

CITY OF LAKELAND, et al.,

     Defendants.

_____

O R D E R

       The plaintiff, Steven Wynn, sues police officer Todd Taylor and his employer, the City of Lakeland ("the City"), asserting both a violation of his constitutional rights and state law tort claims arising when Taylor struck the plaintiff's face with his flashlight, causing serious injuries. The defendants have filed a motion for summary judgment as to all six counts of the plaintiff's complaint (Doc. 27).

       The plaintiff has adduced evidence supporting a claim under 42 U.S.C. 1983 against defendant Taylor for the violation of his constitutional right to be free from excessive force, as well as state law claims for battery

against both defendants. However, the plaintiff has not made the requisite showing under Florida law that either defendant can be held liable for assault or that the City can be held liable for negligently hiring, training, supervising, or disciplining Taylor. Accordingly, the motion for summary judgment will be granted as to the assault claims and the negligence claim, and will be denied as to the excessive force claim and the battery claims.

I.

On May 5, 2006, the plaintiff, Steven Wynn, patronized a bar with his girlfriend, now his wife, Miranda Miller Wynn ("Miller"), and two friends, Curtis Butler and Troy Mason ( Doc. 32-1, p. 10; Doc. 33-1, p. 28). The plaintiff consumed several alcoholic beverages at the bar and became so intoxicated that he cannot recall the events of the night giving rise to his claims (Doc. 30-1, p. 49). The group left the bar at approximately 2:00 a.m. on May 6, 2006, and, during the drive home in Butler's car, Miller and the plaintiff began to argue (Doc. 33-1, pp. 29-30). The bickering escalated, and the plaintiff and Miller exited the vehicle when Butler was stopped at an intersection (id., pp. 31-32).

Lakeland police officer Latina Montgomery, after witnessing what appeared to be a disturbance and possible altercation between the couple, radioed dispatch to report the incident and pulled over to investigate (Doc. 31-1, p. 9). Taylor responded to the radio call and arrived at the scene in approximately two minutes (id., p. 16). All occupants of the vehicle were questioned; the plaintiff was interviewed by Taylor on South Florida Avenue where the argument occurred, while Miller, Butler, and Mason were questioned by Montgomery around the corner (Doc. 33-1, p. 43; Doc. 34-1, pp. 43-44). After Montgomery completed her inquiry, she announced the party was free to leave and requested that Butler and Mason escort the plaintiff to Butler's vehicle (Doc. 33-1, p. 39; Doc. 34-1, p. 45).

Subsequently, Montgomery, Butler, and Mason returned to South Florida Avenue and witnessed Taylor's questioning of the plaintiff. Due to his intoxicated state, the plaintiff was verbally belligerent both prior to, and following, Taylor's arrival at the scene, including cursing directed at the officers, Butler, and Mason (Doc. 33-1, pp. 36, 41, 44, 52, 68, 75; Doc. 34-2, pp. 4-5, 13). Butler and Mason were unable to calm the plaintiff or convince him to leave the scene (Doc. 33-1, p. 41). At some point, the plaintiff "was

stumbling around" resulting in Taylor grabbing him by the arm (Doc. 33-1, p. 62). The plaintiff announced that he was a marine and that Taylor "can't talk to me this way" (Doc. 34-2, p. 13).

At this point, the versions of what happened materially diverge. Mason testified that Taylor was antagonizing the plaintiff, and the plaintiff "continued to be mouthy" with Taylor (Doc. 39, p. 5). According to Mason, Taylor was holding his flashlight in his right hand on the right side of his head (id.). Mason said that Taylor brought the flashlight back to the left side of his body and then brought it back to his right, striking the plaintiff in the head (id., p. 6). Mason testified that Taylor was swinging the flashlight hard (id.). The blow broke three bones in the plaintiff's face (id.).

On the other hand, Taylor testified that, at the time of the flashlight strike, he perceived the plaintiff to be reaching for Taylor's taser. Taylor said that he intended only to hit the plaintiff's right body and shoulder to deflect the plaintiff away from his weapon (Doc. 28, ¶¶35, 37, 38).

The plaintiff was placed under arrest for battery on a law enforcement officer and resisting arrest with violence (Doc. 30-1, p. 23). He

was then transported to Lakeland Regional Medical Center for treatment (id., p. 58).

The plaintiff subsequently filed this case against Taylor and the City. He alleges in count one under 42 U.S.C. 1983 that Taylor violated his constitutional right to be free from excessive force. The plaintiff also brings in counts two through five state law claims of assault and battery against Taylor and, in the alternative, against the City. Finally, the plaintiff seeks relief from the City in count six for negligence in the hiring, training, supervising, and disciplining of Taylor.

The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Docs. 22, 25). The defendants thereafter moved for summary judgment on all counts (Doc. 27). Oral argument was heard on the motion.

## II.

The court shall enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c)(2). Material facts are those over which disputes "might affect the outcome of the

suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant bears the burden of establishing the absence of a dispute over material facts. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).

Where the party opposing the summary judgment motion has the burden of proof at trial, the moving party may discharge its initial burden by identifying specific portions of the record which show the absence of evidence to prove the nonmoving party's case at trial. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991). Alternatively, the movant may come forward with "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." Id. at 1438. If the moving party does not meet its burden, then the motion for summary judgment will be denied. Id. at 1437.

Where the moving party meets its initial burden, the burden then shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc.,

929 F.2d 604, 608 (11th Cir. 1991). If the party opposing the motion is unable to make a sufficient showing on an element essential to its case on which it has the burden of proof at trial, the movant is entitled to summary judgment. United States v. Four Parcels of Real Property, supra, 941 F.2d at 1438.

In determining whether the moving party should be awarded summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. Reynolds v. Bridgestone/Firestone, Inc., supra, 989 F.2d at 469. Any reasonable doubts about the facts are to be resolved in favor of the party opposing the motion for summary judgment. Id.

III.

A. Excessive Force.

In count one of his complaint, the plaintiff seeks damages pursuant to 42 U.S.C. 1983 based upon a claim of excessive force by Taylor during the encounter (Doc. 1, p. 3). Taylor has moved for summary judgment on that claim, saying that he is entitled to qualified immunity (Doc. 27, p. 3).

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known." Vineyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)(quotation and citation omitted). To receive qualified immunity protection, the government official must first establish that he was acting within his discretionary authority at the time of the alleged violation. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003). Once that is shown, the plaintiff bears the burden of proving (1) that the official violated a constitutional right and (2) that the right was clearly established at the time the official acted. Saucier v. Katz, 533 U.S. 194, 200-01 (2001), modified by Pearson v. Callahan, 555 U.S. ___, ___, 129 S.Ct. 808, 818 (2009)(holding that district courts have discretion as to the order in which to address the two prongs).

The plaintiff makes a conclusory assertion that Taylor was not acting in his discretionary authority, but cites no law supporting that assertion (Doc. 39, pp. 10-11). Taylor, on the other hand, has made a showing that he was acting in his discretionary authority (Doc. 27, pp. 4-5). Consequently, Taylor has established that he was acting pursuant to his discretionary authority as a Lakeland police officer when the events at issue occurred.

Baltimore v. City of Albany, Georgia, 183 Fed. Appx. 891, 895 n. 8 (11th Cir. 2006).

Taylor's claim of qualified immunity is based on his version of the confrontation in which he struck the plaintiff in the face with his flashlight because Taylor reasonably believed the plaintiff reached for Taylor's taser. If this were not a qualified immunity case, the plaintiff's contrary showing would seemingly create a genuine dispute of fact. However, "in qualified immunity cases, a 'material issue of fact' never exists." See id. at 895. This is because the record is considered in the light most favorable to the plaintiff, so that "it necessarily eliminates all issues of fact and proceeds with the 'plaintiff's best case before it.'" Id. at 895, citing Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005). In other words, Taylor cannot base his claim of qualified immunity, as he attempts to do, upon his version of how the events unfolded. The plaintiff's "best case" indicates a different scenario.

Butler testified that, while he did not see the plaintiff's hands, the plaintiff was only stumbling and falling forward in the direction of Taylor (Doc. 33-1, pp. 48, 52). Importantly, Mason testified that the plaintiff had his

arms at his sides and stumbled forward at the moment of the strike (Doc. 34-2. p. 17). Consequently, the plaintiff's evidence shows that the plaintiff, whose arms were at his side, was not reaching for the taser located on Taylor's person. See Lee v. Ferrano, 284 F.3d 1188 (11th Cir. 2002).

Moreover, at that point, the plaintiff was not under arrest, and Montgomery had indicated that the plaintiff was free to leave. Under these circumstances, a jury could reasonably find that Taylor used excessive force in striking the plaintiff in the head with a flashlight.

In Baltimore v. City of Albany, Georgia, supra, the Eleventh Circuit rejected a claim of qualified immunity by a police officer who struck an arrestee in the head with a flashlight. Significantly, that claim was complicated by the fact that the strike occurred in a chaotic situation in the face of a hostile crowd. Since those circumstances are not present here, Taylor, a fortiori, is not entitled to qualified immunity.

B. Battery.

Closely related to the §1983 claim of excessive force are the plaintiff's claims of battery against Taylor (count five) and the City (count four). Taylor is not entitled to summary judgment on the claim against him

for essentially the same reasons he is not entitled to summary judgment on the §1983 claim.

Taylor points out that §768.28(9)(a), Fla. Stat., makes suit against a state or local employer the exclusive remedy unless its employee "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." The plaintiff's showing, taken in the light most favorable to him, raises a genuine issue of material fact concerning whether the exception in §768.28(9)(a) applies to Taylor's conduct. Accordingly, summary judgment will be denied as to count five.

In count four, the plaintiff seeks to hold the City liable for Taylor's alleged battery. To the extent that the City asserts that the claim against it should be dismissed because the plaintiff cannot recover against both the City and Taylor (Doc. 27, p. 15), that assertion is unpersuasive. The plaintiff acknowledges that limitation and responds that he is pleading the claims in the alternative (Doc. 39, pp. 17-18), which is permitted by Rule 8(d)(2), F.R.Civ.P.

In Florida, the tort of battery "consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." Quilling v. Price, 894 So.2d 1061, 1063 (Fla. 5th DCA 2005). Contact by a police officer, however, presents a special circumstance. The principles concerning such a contact were stated in City of Miami v. Sanders, 672 So.2d 46, 47 (Fla. 3d DCA 1996) as follows (citations omitted):

> Traditionally, a presumption of good faith attaches to an officer's use of force in making a lawful arrest and an officer is liable for damages only where the force used is clearly excessive.... If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery....

> A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances.... Law enforcement officers are provided a complete defense to an excessive use of force claim where an officer "reasonably believes [the force] to be necessary to defend himself or another from bodily harm while making the arrest....

The question raised in my mind regarding the battery claim against the City is whether the claim fails under both side's version of the facts. Clearly, under §768.28(9)(a), if the jury accepts the version proffered

by the plaintiff, the conduct would be malicious or wanton and the City would not be liable for it. On the other hand, if the jury accepts Taylor's testimony that he contacted the plaintiff in order to defend himself from the plaintiff's attempt to take his taser, the City would not be liable for battery. Conceivably, the jury could find some middle ground that would amount to battery, but not malicious or wanton conduct. In any event, because this issue was not raised by the City, and the plaintiff did not have an opportunity to address it, dismissal of the claim at this point is inappropriate.

### C. Assault.

In counts two and three of the complaint, the plaintiff asserts claims of assault against Taylor and the City. While decisions regularly lump assault and battery together, they are distinct torts with differing elements. Consequently, it does not follow that, simply because the battery claims survive summary judgment, the assault claims survive as well.

"[A]n assault is 'the apprehension of immediate, harmful or offensive contact with the plaintiff's person, caused by acts intended to result in such contacts, or the apprehension of them, directed at the plaintiff or a third person.'" Doe v. Evans, 814 So.2d 370, 379 (Fla. 2002). Thus, an

essential element of the tort of assault is the apprehension of immediate harmful or offensive contact.

The defendants argue that the plaintiff cannot satisfy this element of assault because he has no recollection of the events of that night and therefore cannot testify that he suffered apprehension of immediate harmful or offensive conduct (Doc. 27, p. 15). Under the principles governing summary judgment, once the defendants raised that issue, it was the plaintiff's burden to come forward with evidence of such apprehension. The plaintiff has failed to do so. In the plaintiff's response, not only has the plaintiff failed to point to evidence showing that he suffered an apprehension of immediate harmful or offensive conduct, he has not even acknowledged that element of the tort of assault (Doc. 39, pp. 18-19).

The plaintiff is therefore entitled to summary judgment on counts two and three. See Cisero v. Wal-Mart Stores East, L.P., 2008 WL 2074414 at *6 (M.D. Fla. 2008); Foreman v. City of Port St. Lucie, 2008 WL 958030 (S.D. Fla. 2008). Accordingly, those counts will be dismissed.

D. Negligence.

In count six, the plaintiff claims that the City was negligent with respect to its hiring, training, supervising, and disciplining of Taylor (Doc. 1, p. 8). The City seeks summary judgment on each of these allegations of negligent conduct.

The plaintiff has not responded to the City's contention that it is entitled to summary judgment regarding the allegation of negligent hiring. Thus, the plaintiff has not articulated any argument concerning that allegation. Consequently, the allegation of negligent hiring is properly deemed abandoned. Moreover, since the plaintiff has not identified any evidence that supports such an allegation, under the established principles regarding summary judgments, that allegation clearly fails.

With respect to the allegation of negligent training, the Eleventh Circuit in Lewis v. City of St. Petersburg, 260 F.3d 1260 (11th Cir. 2001), set out the two-step showing that is required in order for such a claim to succeed. See also Pollock v. Florida Department of Highway Patrol, 882 So.2d 928, 932-33 (Fla. 2004). Thus, the plaintiff must demonstrate a failure to exercise a duty of care causing an injury, and, if that is shown, establish that the

training program did not involve a discretionary function. The plaintiff cannot make the required showing at either step.

At the outset, the plaintiff must demonstrate negligence. Florida municipalities, while generally immune from tort liability, have had sovereign immunity waived "under circumstances in which the state or agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws" of Florida. §768.28(1), Fla. Stat.; Albra v. City of Fort Lauderdale, 232 Fed. Appx. 885, 887 (11th Cir. 2007). And, as in other negligence causes of action, the conventional elements of duty, breach, causation, and damages must be shown in negligent training claims. See Watson v. City of Hialeah, 552 So.2d 1146, 1149 (Fla. 3d DCA 1989).

Lewis v. City of St. Petersburg, supra, establishes that the City had a duty of care to the plaintiff during his encounter with the police. It is doubtful, however, that the plaintiff has shown that the City breached that duty in connection with its training of police officers.

The plaintiff argues that Taylor was never trained on how to use the flashlight as a defensive tool or weapon (Doc. 39, p. 21). However, Taylor was trained in the use of the asp baton (Doc. 35-1, ¶13), and the

plaintiff has failed to show that the use of the flashlight is substantially different. In this respect, Taylor was asked on a test during his field training, "[w]hen using an impact weapon, an officer should target [which] areas," with the answer being "calves, wrists, muscle areas" (Doc. 37-1, p. 25, Q49). This question reflects training concerning the use of a flashlight as a defensive tool or weapon.

The plaintiff argues further that Taylor was not trained on the use of force that can be used on "free citizens" (Doc. 39, p. 21). Notably, Taylor's field training records contain a signed copy of a code of ethics that contains the statement that "I will maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others" (Doc. 36-2, p. 15). Thus, the City trained Taylor that he should practice those qualities while at work.

On this point, the plaintiff states that, during his deposition, Taylor said that he could use one level of force higher than what a suspect is using, and that this view is incorrect (Doc. 39, p. 21). However, the plaintiff has not shown that the City has incorrectly trained Taylor. At most, what has been shown is that Taylor did not learn his training perfectly. The field

training reports show that Taylor was hit with a tremendous amount of information that included not only the use of force, but also subjects as wide ranging as weapons, police tactics, city locations, and first aid. The City's training cannot be considered deficient because an officer did not learn the information one hundred percent correctly.

With respect to the City's training (as distinct from what Taylor learned), the only specified flaws were that the written policy did not define the terms "deadly force" and "objectively reasonable," and used the term "lethal force" instead of "deadly force" (id., pp. 21-22). It is hard to believe that these terms were not explained further during Taylor's training by his training officers, particularly in anticipation for testing that was conducted during that phase. Moreover, the terms seem self-explanatory.

The plaintiff also argues that the City failed to train Taylor on how to deal with intoxicated subjects (id., p. 22). This contention is dubious since it would seem that drunks, like people, come in all varieties, so that they have to be treated on an individual-by-individual basis. Significantly, the plaintiff has not identified in his memorandum any specific training that should have been given, but was not.

Regardless, Taylor's field training records show that he was meaningfully involved in DUI matters. Moreover, his field training tests include questions concerning the handling of matters involving intoxicated subjects (see Doc. 36-12, p. 27, Q20; id., p. 29, Q25). These records reflect training with respect to intoxicated individuals.

In sum, it is doubtful that the plaintiff has shown that the City breached a duty in connection with its training of Taylor.

In all events, the City is not liable for negligent training because, even assuming that the City breached a duty regarding training, that breach was not a proximate cause of the plaintiff's injuries. The injuries resulted not from a lack of training, but from a spontaneous and unconsidered reaction, under either side's version of the incident.

The plaintiff's evidence is that the plaintiff and Taylor were engaged in a verbal confrontation. The plaintiff was simply standing with his hands at his side and was not reaching for anything. Taylor then struck the plaintiff in the face with his flashlight. The obvious inference from this evidence is that Taylor lost his temper and hit the plaintiff. Under these circumstances, Taylor was not thinking about his training. Consequently, it

was not flawed training, but flawed character, that caused the plaintiff's injury.

Taylor's version is that he thought the plaintiff was reaching for his taser. He testified that he "reacted to [the plaintiff's] actions" (Doc. 29-3, p. 2). This also was a situation where Taylor did not have time to think about his training and apply what he might have learned. Rather, his conduct was instantaneous.

Therefore, Taylor's strike of the plaintiff was not caused by a lack of training under either version of the incident. Thus, the plaintiff has not shown what additional training would have either prevented Taylor from losing his temper, or from reacting instinctively to an attempt to grab his taser. Accordingly, the claim of negligent training fails because the plaintiff has not shown that inadequate training caused his injury.

Wholly aside from the plaintiff's failure to establish all the elements of a negligence claim, there is a further impediment to the claim of negligent training. Once a duty of care is established, it must be determined whether "the claim is nonetheless barred by the 'discretionary' act exception to the waiver of sovereign immunity." Lewis v. City of St. Petersburg, supra,

260 F.3d at 1263; see also Pollock v. Fla. Dept. of Highway Patrol, supra, 882 So.2d at 933. The City, citing Lewis v. City of St. Petersburg, supra, contends that the claim of negligent training should be dismissed because the plaintiff's claims challenge only discretionary acts of the state agent, and therefore, do not fall within Florida's waiver of sovereign immunity (Doc. 27, pp. 21-22). However, operational acts are not protected by sovereign immunity and, therefore, such claims against a municipality may proceed.

A discretionary function occurs, under Florida law, when "the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning." Henderson v. Bowden, 737 So.2d 532, 538 (Fla. 1999)(citation omitted).* "An 'operational' function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision

---

*"An act is 'discretionary' if all of the following conditions are met: (1) the action involves a basic governmental policy, program, or objective; (2) the action is essential to the realization or accomplishment of that policy, program, or objective; (3) the action requires the exercise of basic policy evaluations, judgments, and expertise on the part of the governmental agency involved; and (4) the governmental agency involved possesses the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision." Albra v. City of Fort Lauderdale, supra, 232 Fed. Appx. at 885, 887, citing Lewis v. City of St. Petersburg, supra.

as to how those policies or plans will be implemented." Id. Consequently, in determining whether the City is immune from tort liability, the court must examine "whether the challenged actions are nonetheless acts which required the exercise of basic governmental discretion, as opposed to the implementation of an already established policy." Lewis v. City of St. Petersburg, supra, 260 F.3d at 1262.

The plaintiff contends that the City failed to train the plaintiff in the following three areas of law enforcement: (1) how to use a flashlight as a defensive weapon, (2) the level of force appropriate to use, and (3) how to deal with intoxicated individuals (Doc. 39, pp. 21-22). Notably, as the defendants point out, the Eleventh Circuit has held that "[a] city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." Lewis v. City of St. Petersburg, supra, 260 F.3d at 1266. The plaintiff does not respond to, or even acknowledge, the defendants' contention that these training decisions are discretionary acts. In fact, the plaintiff does not cite to caselaw involving discretionary functions, including Lewis, which was cited by the defendants,

much less distinguish this case from the persuasive authority cited by the defendants (Doc. 39, pp. 21-24).

In all events, it is apparent from the plaintiff's papers that he is merely disputing the content of the defendant's training programs, and not the implementation of that training. The plaintiff's first and third allegations, that the City never trained Taylor on how to use properly the metallic flashlight or how to deal with intoxicated subjects, clearly relate only to the content of the training program and, and thus implicates the City's discretion about the general substance of its officer training. Therefore, the City's training decisions on flashlights and intoxicated subjects are discretionary functions that are immune from suit. See Lewis v. City of St. Petersburg, supra, 260 F.3d at 1261-62 (plaintiff claimed that the City failed to properly train its officers in how to handle crisis management and failed to train its officers regarding the proper use of force in a crisis management situation); Matvejs v. Martin County Sheriff's Office, 2006 WL 3755202 (S.D. Fla. 2006)(plaintiff challenged the Sheriff's alleged failure to train his officers in the use of nonlethal force in dealing with dogs that belong to the public);

Walker v. Palecek, 2006 WL 335803 (M.D. Fla. 2006)(plaintiff challenged a city's decision regarding how to train its officers).

The plaintiff's challenge to the City's failure to train officers on the acceptable use of force is slightly different. He contends that Taylor was trained regarding certain levels of force, but that the training, due to the terminology contained in the City's general order, was confusing (Doc. 39, pp. 21-22). The thrust of this contention also is that the content of the training was insufficient.

In sum, the plaintiff's arguments relate only to the content and the nature of the training program itself, and not to specific actions implementing the training of the officers involved in his case. Accordingly, summary judgment will be granted as to count six's claim of negligent training for the additional reason that a challenge to a municipality's policy decisions regarding what to include in the training of its police officers falls under the "discretionary function" exception to the waiver of sovereign immunity. Lewis v. City of St. Petersburg, supra, 260 F.3d at 1266.

The plaintiff also asserts a claim of negligent supervision. This claim is unsupported by probative evidence.

To prove a cause of action for negligent supervision under Florida law, the plaintiff must show "(1) the existence of a relationship giving rise to a legal duty to supervise; (2) negligent breach of that duty; and (3) proximate causation of injury by virtue of the breach." Albra v. City of Fort Lauderdale, supra, 232 Fed. Appx. at 888. As Taylor's employer, the City had a duty to supervise him. However, a breach of the duty to supervise by the City is cognizable under Florida law only "when during the course of employment, the employer becomes aware, or should have become aware of problems with an employee that indicates his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment." Department of Environmental Protection v. Hardy, 907 So.2d 655, 661 (Fla. 5th DCA 2005).

The City moves for summary judgment as to this claim on the ground that "there is nothing in Officer Taylor's employment history that supports Plaintiff's bid for a finding of negligence against Lakeland" (Doc. 27, p. 19). In response, the plaintiff points out that Taylor was, prior to the plaintiff's injuries, involved an incident involving a person named Willie

Ware, an intoxicated arrestee, that he argues should have placed the City on notice of Taylor's harmful propensities (Doc. 39, p. 23).

An officer's employment history can be considered relevant to the plaintiff's claim of negligent supervision. Dickinson v. Gonzalez, 839 So.2d 709, 713 (Fla. 3d DCA 2003). However, the incident involving Ware does not support such a claim.

Ware had been placed under arrest for drunk and disorderly conduct and had attempted to flee (Doc. 29-3, p. 44). When the police tried to put Ware in the patrol car, he stiffened his back and legs to prevent that (id.). In order to get Ware into the car, Taylor kneed Ware twice in the thigh (id., p. 45). Taylor also used OC spray, but there is no evidence that Taylor struck Ware with any object.

This incident appears to be nothing more than a routine police procedure. Taylor's actions would fall in the category of conduct that the Eleventh Circuit has termed "de minimus force." See Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2010). His actions with respect to Ware are not similar at all to the alleged conduct in this case. Not surprisingly, Taylor was not disciplined for his actions with respect to Ware. Moreover, Taylor's

participation in Ware's arrest did not give the City reason to think that Taylor needed some sort of special supervision, and it certainly did not, contrary to the plaintiff's assertion (Doc. 39, p. 23), justify termination, or even demotion. Notably, the plaintiff's failure to identify anything more significant than the Ware incident underscores the lack of merit in the claim of negligent supervision.

The plaintiff, in passing, makes the related assertion that the City was negligent in disciplining Taylor. The incident involving Ware is the only basis set forth with respect to this assertion. Under the circumstances of that arrest, the City could reasonably conclude that no discipline was warranted.

In sum, the plaintiff has failed to come forward with probative evidence showing that the City was negligent in hiring, training, supervising, or disciplining Taylor. Further, the plaintiff has not shown that the training program did not involve a discretionary function. Accordingly, count six will be dismissed.

It is, therefore, upon consideration

ORDERED:

That Defendants' Motion for Summary Judgment (Doc. 19) be, and the same is hereby GRANTED in favor of the defendant City of Lakeland, and against the plaintiff Steven Wynn, as to count two, count three, and count six. The motion is hereby DENIED as to count one, count four, and count five.

DONE and ORDERED at Tampa, Florida, this /6th day of July, 2010.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE